Mr. Robert Black, I'm going to go after the Emily, Mr. Jason Johns. All right, Mr. Black, are you prepared to proceed? Yes, I am.  Good morning, Your Honors. Good morning. Good morning. Can you please report? Again, my name is Robert G. Black, and I represent the plaintiff's appellant, Mary Esker, in this matter. This matter comes before Your Honors on the grant of a motion to dismiss on race-judicata grounds and on race-judicata grounds only. So that's what we have before the Court at this time. Mr. Black? Yes. Who is a party in a probate proceedings? Because that's one of your arguments. It's not our primary argument. Well, it's one of them. But it's different than, like, a necessary party in other civil litigation. But is it an error? Is it a possible error? So how is it defined? And certainly that's one of the issues that we've identified under the three elements for race-judicata. In our view, that the party or a necessary party in a probate action depends on what is going on within the probate action and what sort of steps are taken in terms of probating the will and any other steps that might be available or viable within the probate act and that the probate court is asked to address. Would a creditor who has been notified, a notified creditor be a party? I believe that since the probate act is designed to do several things, one of which is to collect debts and the second of which is to pay off things after the collection of debts, then I would think that that is certainly a valid viewpoint, Your Honor. So, well, maybe I'm taking you someplace you don't want to go, but if that's and that is one of the purposes of the act, if by the time this case, Barbara Gerge's case in 2008 was probated, Ms. Roth thought she had, she owned the property or was going to own this property, why did she notify your client as a possible heir versus now a debtor because they've been living in her house? I think that's part of the inquiry here, Your Honor, is the procedure undertaken by the defendant Ellen Roth in order to comport with and comply with the probate act and have an adjudication of title on the merits that's sufficient to have the preclusive effect of res judicata on subsequent action to quiet title. I think that hits it directly on the head here because what we're dealing with here in terms of res judicata is an equitable document. On the one hand, it's designed to make sure that disputes are fully resolved and we have finality and we don't go over things and over things again. On the other hand, it is an equitable doctrine. It is designed to avoid the rote and technical application of the rule itself, and it asserts and allows that interest cannot be affected without proper notice and an opportunity to be heard. So then the issue then becomes whether that, under these circumstances, the probating of a will and the closing of a state and the issuance of a file report can have that absolute preclusive effect on subsequent litigation on the issue of a dispute as to title. Our answer here obviously is no, it may not. To get there, there's certain things we have to look at. What does the probate court do under the Probate Act? Again, how does res judicata come into play here? And tangentially, I would say some aspects of the venue statute because it's otherwise raised by defendant, the Forcible Entry and Detainer Act. Now you're submitting, Mr. Black, that the title was not adjudicated at the probate court. That is correct, Your Honor. Now it could have been, could it not, had Mary come into probate? Well, in my position here, Your Honor, is that the Probate Act, the probate court obviously is a court of general jurisdiction. It may do many things, and we're not disputing otherwise. But the Probate Act, and specifically Section 20-1A and 20-1C, puts the onus on the administrator of the state. And that says that, 20-A says, that the administrator may be trained in action for possession or to determine title to the real estate. Except that, to determine title, no action may be commenced without authorization of the court which issued the letters. There is no indication in this record that ever occurred here. Ellen Roth did not go to the Circuit Court of Cook County and said, look, under Section 20-1A, I would like a determination as to title. That never happened. But was Ellen aware, was Ellen aware at that time of that land trust that Maria had placed that property in? Because we're here on the pleadings, Your Honor, on a motion to dismiss as to res judicata, I would submit that there are certain aspects that perhaps neither party was aware of. Would that have been relevant? Would that make a difference? I mean, she's going into probate court thinking she has claim title, correct? Correct. So what would prompt her to ask the court to make a determination as to, you know, the judicata? If she was unaware, probably nothing. Just like with the plaintiff, Mary. If she was unaware of this quick claim deed, which is what we have alleged, then probably nothing. So there is still not an adjudication, there is still not something that someone asks the court to adjudicate consistent with the probate act or otherwise. And I think, too, it's very important to make the distinction between possession and title, and Section 20-1A makes that distinction, as well as the case law in terms of the Forceful Entry and Detainer Act. Section 20-A1 says, all right, you can adjudicate possession within this case, but to do title, you've got to ask the court for that. And if you look then at the Forceful Entry and Detainer Act, the cases are legion there. I'm sorry, let me come back for a second here. Section 20-1 says that anything that's done in terms of possession, specifically, is not a determination of title. And that's consistent with what's going on with the Forceful Entry and Detainer Act, because the Forceful Entry and Detainer Act is a summary procedure to obtain possession, and it's designed so that there's not all these different things going on to obtain possession, that you change the locks or there's some aspect of violence or whatever. It's an orderly progression for possession. Then this court, in terms of the Forceful Entry and Detainer cases, and the Supreme Court has determined that the only thing at issue in a forcible case is possession. There is no title to be ascertained. There is no title to be determined. Let's go back to that knowledge on the part of Mary and Maria, actually. Certainly. Wasn't there some testimony that Ellen had made a comment, something about, oh, I'm going to get the house or I'm going to take the house, and that's what prompted them to do what they did? Certainly are. Based on the pleadings, we have the will that was executed by the parents in 1986. We have, in 1996, with the father seriously ill with Alzheimer's and the mother fading, an intent to tie things up so that the daughter, and specifically Barbara, can have a lot more to do with taking care of the parents' estate. With respect to taxes, I think. With respect to taxes, payments, or everything like that. That's the time that this quitclaim deed is created, and then we have the allegations as to whether it is a valid quitclaim deed, particularly based upon the condition of the father, the language of both parents being they speak and read Polish, all those other aspects that have been alleged. Then we have the situation where the father dies in 1997. To assist the mother, Maria, Mary moves into the house in 1999 and remains there until she's dispossessed of the home. On her deathbed, Barbara, who contracted cancer, says in November of 2007 that, Mary, I guess the house is yours now. Following her untimely passage, defendant Ellen makes references to the house being hers now, so therefore the family goes in, and under the direction of Maria, under the power of attorney, that they issue, I believe it's the trustees, well, they put it in trust and subsequently issue the trustees' deed for it. We have taken the position, based upon the pleadings, and again, we're at 2615 and all the allegations have to be taken as true, that this shows that nobody knew about the quitclaim deed or the validity of the quitclaim deed or anything to do with the quitclaim deed. Well, how did they not know about the quitclaim deed? How did Maria and Mary not know about the quitclaim deed to Barbara? They had to know about it. Well, is there any evidence to follow up that Barbara knew about the quitclaim deed? No. No, and I think that the contrary evidence to that is Barbara's statement about her in the deathbed that, okay, Mary, you get the house now. Well, maybe she's telling her, oh, I have the quitclaim deed, now you get the house. I mean, you could certainly interpret that a bunch of ways. I guess that's why you may be premature and indecisive. Well, we certainly can interpret it a number of different ways, but the problem is at the 2615 setting, we have to interpret it only one way to allow for restructuring to apply. So there are still a myriad of things that need to be sorted out in terms of the quitclaim deed that we don't know at this point and we haven't gotten to in terms of discovery or any further type of aspects of the litigation because we were out on a 2615 motion based upon race judicata. Justice Shostak asked whether your client could have filed some type of petition to quiet title or petition to attack the title in the probate, and you answered her by indicating that the probate act puts the onus on the administrator to do so. Yes, Your Honor. I want to ask you the question again. Could your client, with court authorization under the probate act, have filed something to attack the title in the probate action? And I'm going to give you my most candid answer, Your Honor. I did the research. I don't know the answer to that question. I did not see anything that says that they can, nor did I see anything that says they cannot. However, what I do have in front of me is section 20-1A of the probate act that says if there is a question as to position or title, then it is incumbent upon the administrator to ask the court which issued the letters to make that sort of determination. So I wish I had a 100% for certain answer, for Your Honor, but based upon what I've seen and done the research upon and counsel may correct me later, but I have not seen anything that says that they can do that or are obligated to do that. What I think that is germane here, too, Your Honor, is let's say that let's presume for the sake of argument that she could, okay, that she was fully knowledgeable and cognizant of everything despite the allegations and that she could go in there and do that. And, again, our allegations are she wasn't fully knowledgeable and perhaps neither side was fully knowledgeable. But if she had gone in there to assert some sort of right, assuming she could under the probate act, then the venue statute arises. And what do we do here? Because she has the ability to say, all right, I want to determine the title of the quiet title here, but in order to do so, the venue statute says we need to be in DuPage County where the property is situated. So it becomes... Well, at least it would have raised the issue in the probate. It would have raised it. That part of it could have been spun off to DuPage. It would have raised all these issues on the probate court as opposed to what has occurred here. Yes, Your Honor. What do you make of his argument that this is moot because the property's already been taken, she's already kicked out of the home? I mean, your opponent argues mootness. Right, he argues mootness on the motion to dismiss. And I have two basic responses to that, Your Honor. Number one, he is asserting that the forcible entry and detainer action, the order under the forcible entry and detainer action is what constitutes mootness. And that forcible entry and detainer action possession for defendant Ellen Roth occurred after our briefing here. Once again, I will point out for your honors that all a forcible action is supposed to do is determine possession, not title. Okay? There is still an issue of title that has never been determined and fully adjudicated and addressed by any court here. Also, in our reply brief, I believe notes this, that I believe Elizabeth Pendens was filed so that would prevent any sale of the property ostensibly or any attempted sale of the property ostensibly by defendant Ellen Roth or the pendency of these proceedings. Are you aware whether or not Mary had received notice after Roth recorded the release in DuPage? I'm sorry, I didn't quite get the first part of that. Did you have Mary receive notice that Roth recorded the release of interest in DuPage County sometime in September? Okay, I'm trying to remember from the record. I mean, she did nothing in probate court. She got notice in probate. She did nothing. Did she get notice when she entered that, recorded the deed in September 23, 2008 in DuPage County? I am not recalling specifically from the record, Your Honor. I don't recall any notice of the recording of that deed. However, I would assert that whether or not she did receive it is largely irrelevant to what's got going on here because we have a situation where the probate act tells us what's supposed to be going on and it wasn't done, and there is still the ability to have this adjudication performed. Maybe that's, you know, I know that the forcible entry and detainer certainly got the family going and investigated what happened. But that got their attention. Well, and that actually, I wouldn't want to phrase it as getting their attention as much as I would phrase it as now they knew they had a title claim, that there was a title issue. Do you think there would have been a title issue? Would we be in a position where there would be a real issue had Roth turned around and sold that home to somebody else? I mean, the title still had a cloud on it, did it not? That's an interesting question. And I'm not, in terms of the title having a cloud on it because the motion or the action to acquire the title had been dismissed. It was never adjudicated. So technically speaking, there wouldn't have been a cloud on it, I suppose. Right. But that comes back to the fact that there still needs to be the opportunity to be heard and have your interest adjudicated. All right. Mr. Black, you'll have time on a rebuttal if you so choose. Thank you. Thank you very much, Your Honor. Mr. Johns. Good morning, Your Honor. Jason Johns on behalf of the defendant FLE, Alan Roth. I'd like to first start out with the issue about Section 521 of the Probate Act requiring the executor to file a quiet title action when there's no known dispute regarding the title. 520 gives the executor the ability to do that. I would argue that actually what's more important is that the appellant knew that Alan Roth was claiming an interest in the house through Barbara's estate. Well, Maria knew. We don't, according to at least the briefs, Maria knew and Teresa might have known. Do we have any knowledge that Mary knew? In the record, I am not aware that there's anything in the record specifically stating that Mary knew, other than her brief stating that she, you know, that that was the case, that that was the motivation for Maria. And I believe it uses the references to the family, she made comments to the family. I don't know that for sure, but I believe her brief states that the comments were made to the family. Well, Mary received a copy of the inventory in the final report, correct? Correct. You're right. Correct. Absolutely, Your Honor. See, the issue is not only did she have, possibly have, this actual notice from Alan, but she also received all of the legal notices throughout the whole probate proceedings. She does not dispute that she received the notice that the estate was opened, that Alan was appointed independent executor, that she had 42 days to prove out the will, she had six months to file a claim. She doesn't dispute that, or to file a contest to the will. She doesn't dispute that. She doesn't dispute that she received the inventory in the final accounting. She also doesn't dispute that she received the final report of the independent executor. But Mary's claim to the property is not through Barbara's estate. Her claim to title of the property is from somewhere outside of Barbara's estate. So why couldn't Mary have simply seen this as Barbara, whoever was processing Barbara's estate, as putting in whatever interest Barbara may have had in the home into the estate? Your Honor, the Probate Act allows for any interested party to file any action within the probate proceedings that is germane to the administration of the estate. I would argue that on knowing, or on seeing, getting these notices and seeing that this was included, that Mary was an interested party and could have brought an action within the probate proceedings to address the issue of title. But the house isn't mentioned until the final inventory, is it? As far as the notice is correct. So it's not in the will. It's not in the will. The house is not mentioned in the will. Your Honor, there's nothing in the Probate Act or in case law that would require that the will specify the real estate. It does say that it's passing everything that she owns, including personal and real property, to Ellen Roth. It does reference real estate. It doesn't specify any addresses or any legal descriptions, but it does say that it's transferring real estate. Well, we know from the briefs that both Eugene and Maria were Polish immigrants, didn't speak a lot of English, both had illnesses as the time in question is going on. We also have some indication that Mary has some impairment. But does she speak English? I mean, either she's sighted or hearing. I can't remember. She's deaf, Your Honor. So is Ellen Roth. Both of them are deaf. And I don't see that that would have prevented her from getting these notices or understanding or being able to exercise her rights under the Probate Act. A purpose of the Doctrine of Res Judicata is to avoid multiple actions with the same parties that concern the same issues, correct? Correct, Your Honor. Now, we have in this case title that passes to Barbara and then later the mother placing title into trust. So we have two separate things that are filed regarding title on this house. At some point in time in the future, someone's going to have to file an action to quiet title if they ever want to sell this property, correct? So why under the equitable Doctrine of Res Judicata couldn't the court in DuPage have heard that? If this were, if this involved, if Mary was a third party, was not a party to probate proceedings, was not an heir, didn't have a possible financial interest in the property, I think that in the future a quiet title action would be brought and would appropriately be brought. However, that's not the case that we have before us. What we have before us, Your Honor, is that Mary was a party to the probate proceedings. She had the opportunity to have her dispute regarding title. She had the opportunity to have the dispute regarding title adjudicated in the probate proceedings. And if she didn't think that the probate proceedings was the proper venue for doing that, she could have brought her action at that time in DuPage County. Well, Alan could have brought it in probate too, could she not have? Your Honor, she's not the one disputing title though. She, through the probate process, she's got a deed from 1996. Are you submitting she had no knowledge of this land trust that was subsequently filed by Maria? I don't believe there's anything in the record that indicates that she had knowledge of that land trust or that there was a dispute regarding the title. There was certainly a dispute over possession because she was not in possession when she was going through probate. And the probate act allows her to, the issue is whether it allows her or it's incumbent upon her to resolve this issue of either possession, title, and or possession in the probate action. She never raised possession at all in the probate action, did she? No, she didn't, Your Honor. And I don't expect... Nor did she raise any issue that she was owed money by Mary, who was then living there, or Maria, who had since deceased? No, but the property, through her thought, through the probate estate, the property would have gone to her. She could have done whatever she wanted with the property. And if you look at, with the motion to dismiss and my affidavit, there's a lease that was tendered where she was willing to let Maria and Mary live there, essentially rent-free, until Maria's death. That's what the terms of the lease, it's in the record. So, you know, she was, this was, Maria was essentially her mother-in-law, her partner, her partner's mother. She was willing to let her live there. So, given that that's her thought process, she's not, you know, the fact that she doesn't move for possession through the probate process, I don't think it's surprising, Your Honor. The lease isn't signed, though, is it? Correct, Your Honor. No lease was ever signed. So she knows that there's some issue that may come up. I'm sorry? They didn't sign it. There could be an issue about why they didn't sign it or... Your Honor, the forcible entry and detainer action has been litigated to a final unappealable decision. No, I'm talking about in the probate action. The lease was tendered before the forcible because Maria's already dead by that time. Correct. So when did that lease get tendered and not signed? Back in 2005, 2006? No, Your Honor, I believe it was July, in June or July of 2009. I'll concede that it was after... Maria's already dead. Maria died in 2007, didn't she? My client was unaware of that, Your Honor. When she tendered the lease, she was unaware of that. If, in fact, the quick claim deed was invalid and the trust, deed into trust, was valid, then the probate court would have absolutely no jurisdiction over the rest to transfer the title of this property, correct? Well, Your Honor, I guess... I'm not sure, Your Honor, because the deed transferring it into the land trust was done after the probate estate was opened and after it was included on the inventory. Actually, I should say it's after the estate was opened, but I don't know if it was after the inventory. I don't know the answer to that, Your Honor, if the probate court would have any interest in it, though I don't know how the issue of the deed that would have been addressed would have been brought up. I mean, I guess they would have had the opportunity to bring a quick claim, a quiet title action before the probate proceeding, and then if they had done that, yes, Your Honor, correct, it wouldn't have been included in the estate of Barbara Virga. Well, there are cases, at least out of jurisdiction, where the quiet title actions are brought after the probate, and then the quiet title court, which you answered, you said, basically the probate court didn't have jurisdiction over that property to transfer title. Yeah, I don't know. I guess I'm unaware of those cases. I know that there are cases cited throughout the brief, for example, in Ray Holland, where there was a quiet title, a quick claim deed that was invalidated. I think in Puitz, the case of the First National Bank of Skokie v. Puitz, I think would have been maybe an analogous situation of what probably should have happened. Well, Apple v. Kyle is maybe an appellate court case. In Ray's state of Swindoll is a Montana appellate court case. Washington appellate court case, in Ray's state of Missouri. These are all cases that stand for the proposition that if the person whose estate is being probated doesn't actually have title, doesn't actually own the property, the probate court decisions have no bearing on that property whatsoever. And I'll admit that the Probate Act says that the person who receives title from the probated estate receives only whatever the decedent owns. So if the decedent did not own the property, this person would not have received anything. But that's not, again, that's not the issue in this case. The issue in this case is that Mary Gergo was a part of the probate proceedings and had an opportunity to bring a quiet title claim or some sort of a citation proceeding, third party citation proceeding, as part of the probate proceedings. But the probate court never addressed the question of title, did they? Because Mary never brought it up. So I think the case Apple v. Kyle that Justice Burke just talked about basically addresses that issue saying, you know, who takes the property owned by the decedent if it's property that is listed as an asset through the probate court? And the question of title is never addressed. How are the other parties stopped from proceeding to get the court to make a determination as to title on that property? I guess, you know, how do you bring, how do you say, well, the probate court didn't address it because she didn't ask them to address it. Your client had the opportunity to ask them to address it, too, but she did not. So therefore, she could just lie in the weeds and say it has never been addressed in the probate court, therefore it's my property. That title was never, ever addressed, was it? Your Honor, the idea that my client lied, was lying in the weeds and was being deceptive and was waiting until the probate state was closed or something like that. I'm not saying that your client was. I'm just saying in a situation, I'm just giving you a hypothetical situation. It's never been addressed in probate. The title has never been addressed in probate. The title has never been addressed anywhere. So how is Ray's judicata or how is the individual stopped from addressing the title issue in another court at a later time? Ray's judicata covers not only claims that were raised, but claims that could have been raised. And Mary could have brought her claim within the probate proceedings. She hadn't noticed. I mean, she does not dispute that she received the inventory. So here we've got the inventory. We've got my client who is, hey, I'm saying to you, I'm including this in the estate. I think this is part of the estate. So she's going out there. She's communicating, giving them notice that she thinks that this is, that Barbara owns this piece of property. They chose, Mary chose not to exercise her right to protect her, or to have her opportunity in court. Okay. So how about if Alan Leeds left court that day and turned around and sold the property to anybody? Prior to the inventory being? Well, after the inventory was filed, after the estate was closed, she went out and sold this property. What happens when the person who goes to buy the property sees this land trust? Then don't we have to have an action to quiet title? Your Honor, I think that the issue of title has already been addressed. I mean, if it wasn't addressed. So if you're going to tell this person who comes in and buys the property, oh, don't worry about that land trust on there because the title has already been addressed at some point. Does there not have to be some sort of action to quiet title? To be honest, Your Honor, I don't know. I don't think that there would, because I do, I still go back to the issue that the title was addressed, or could have been addressed in the probate proceedings. Moreover, I argue that it was addressed in the forcible entry and detainer action. And, you know, and that. Well, forcible entry and detainer action doesn't deal with title. That only deals with possession. Your Honor, the general rule is that the forcible entry and detainer action decides only possession, which is a quantum less than ownership. That's the general rule. The courts have, and I believe the Act itself, contemplates exceptions to that rule. Our Supreme Court itself has created an exception in Shorewood v. Fisher. So I think there are exceptions to that general rule, and I think this falls within those general, within one of those exceptions to the general rule. Specifically, title was the only reason, title was the only reason my client would be entitled to possession. Furthermore, it was the defendant's only, Mary's only affirmative defense was that my client did not own the property. Did not file a motion for. That wouldn't be relevant in a forcible is what really, it wouldn't be relevant that she didn't own the property. Your Honor. That was her belief. Well, but the issue was, she argued that the issue of title was central to both proceedings. In her motions to stay the proceeding, and in her motion to stay the enforcement of the judgment of possession, the appellant argued that the issue of title was central to both the quiet title action and the forcible entry and detainer action. She said it was the same issue. The same issue was being addressed in both cases. And she was even granted her motion to stay the enforcement of the judgment of possession. All she had to do was put forward a bond. She chose not to put forward that bond. So, and nor did she choose to appeal the denial of the first motion for the stay, nor did she choose to appeal the order of possession. She didn't even file a response to the summary judgment, the motion for summary judgment for possession. She didn't protect her right to dispute the claim. First, she makes the argument that the title is an issue, and then she doesn't protect her right to dispute the title. Your Honor, if I may just, in conclusion, state that I do think that if the issue you find for the appellant, I do think that it's a precedent that is going to unravel the probate proceedings, that I think the legislature has created the probate proceedings to allow for finality and to finally and speedily determine the rights of all interested parties to the decedents' estates. And I think that by allowing a party to the probate proceedings to later come and make a claim against the property is going to destroy that finality. Well, could you avoid that problem by having whomever it is that's claiming property in the probate estate to have the probate court make a determination as to the title in the probate action? Well, Your Honor, the probate act doesn't require that. No, it doesn't. But, I mean, if you're saying, boy, we're going to turn the probate act on its ears. I mean, wouldn't this encourage litigants and attorneys who are practicing in the probate court that if there is any question with respect to title, maybe you can clear that question of title off in the probate court. Your Honor, I don't think that it would even require, I don't think that it would just be wherever you had a question of title. It would require a motion for quieting title in every probate proceeding where there was a real estate involved, where the decedent owned real estate. And I think that that would overwhelm the courts. And if you're going to take the issue of the venue and say that it actually had to be brought in the county where the real estate was located, you're going to have the probate estate essentially doing ancillary proceedings within the state of Illinois. But in every probate case where property is being listed as an asset in the inventory, there's not questions with respect to title in all of those cases. I mean, in most probate cases, you have a husband who leaves everything to the wife upon his death or a wife leaves to the children upon her death. Unless you have some competing pieces of documents such as here, a land trust and a quick landing, unless you have some competing pieces of documents, I mean, wouldn't it be prudent to bring that up in the probate court? I guess that's my question. But in this case, Your Honor, there's nothing in the record that says that Ellen knew of any dispute regarding the property. She told them, I think I'm going to inherit this through Barbara's estate. Nobody disputed it. Nobody came back and told her, no, you're not. Well, they never filed any sort of action based on the record. There's nothing that they filed. They never filed anything. But there was discussion with respect to the ownership of this property. Well, Your Honor, all that's in the record is that Ellen indicated she thought she was going to receive the property. There's nothing else in the record regarding any sort of communication in the other direction. Okay. Thank you. Thank you. Mr. Black? May I, Your Honors, interrupt? Counsel has been asserting here. I lost my train of thought from the table to here. Counsel has been asserting here that what we're talking about here is that, you know, Ellen didn't do anything. Ellen didn't dispute a title. Ellen didn't make a claim as a title. Well, you've got to know that you have a claim before you can dispute that claim. And what we've got here — Well, doesn't that make the same doubt for him? Does it mean to know that there's a dispute before he raises a dispute? Certainly. But the fact of the matter is no one raised a dispute. So, as Your Honor pointed out, if someone wants to buy this property, in the chain of title, there's a quit-claim deed, and there's the trust situation, which takes precedent, which controls how is the valid title. Ellen never disputed — or, excuse me, Mary never disputed that Ellen would take under the will anything Barbara validly had. That's not an admission that Barbara had title to the disputed property that she could pass along. Counsel here, and I hope I'm not incorrect in what he stated, but he, in response to a question, said, well, if this had been litigated based upon the quit-claim deed on the one hand and the matter being placed in trust on the other hand, then it probably would have gone to his client. Well, we don't know. That's never been adjudicated. That's the main thing that's at issue here. The house is not in the will. The matter in terms of how this property passes along, in terms of its title, has never been litigated. You would agree that if Mary claimed title to this property under Barbara's estate, indicating that Barbara had given it to her in some fashion, that it raised judicata, well, certainly it was. If she had made that claim and had the ability to make that claim and the court adjudicated it, yes, Your Honor. But your argument is, of course, that she's taking it — her claim to title is separate apart from Barbara's estate. Yes, because under the circumstances that we are presented with and based upon the allegations that we had, neither side knew what they were — what was going on ostensibly with this title situation. It still needed to be litigated. And that's the one point that I did want to make. Counsel talked about how the probate act could be turned on its ear here. Well, I would submit that if this procedure is affirmed under these circumstances, that the probate act is certainly turned on its ear because it would allow for, in another action, a less-than-scrupulous party to, with knowledge, take these types of actions and never have the title dispute litigated, but still take title to it under the auspices of the probate act, where the property is not specifically mentioned in the will, but what happens is it is mentioned in the final report, in a final report. Now, had Don Allen asked the probate court to make a determination with respect to title — Correct. — and Mary failed to respond, then clearly we would have raised you to copy. A whole different story, Your Honor. Yes, Your Honor. And in terms of who had the onus to do so or the ability to do so, well, again, based upon the allegations, perhaps one side didn't know one thing and one side didn't know the other thing, but also based upon those allegations and based upon the probate act, it was never done. And the administrator, in terms of any sort of possession issue, needed to ask the court to have that done. And in terms of the final comment, in terms of the forcible entry and detainer action, we have cited the case law. In terms of the motion to dismiss and in terms of aspects of mootness and collateral estoppel, that still did not determine anything in terms of possession. Basically, there were a couple of motions for stay that were filed in terms of that action that said, please don't kick me out while we have an appeal for a action acquired title. Don't these questions about should Mary have done this or should Ellen have done this, don't they sort of fly in the face of the concept of independent administration? The whole point of independent administration is it's supposed to be easy, it's supposed to be straightforward, it's in and it's out, but it still has the obligation to notify creditors, notify potential debtors, things of that nature. And in 99% of the cases, that would be true and that would be valid. Under these unique circumstances, you have what appears to be a quit claim deemed filed and you have what is a trust documents once the mother, Mary, heard Ellen saying, I've got, I think it was Maria, thank you, saying this. So I hear my time is up. If there are no other questions, we ask that the judgment and motion to dismiss be reversed and the matter be remanded for further proceedings. Thank you, gentlemen, for argument. The case will be decided in due course.